**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

CHIBU ANAEME,

                    Plaintiff,

             vs.                                  No. CIV. 96-1479 BB-WWD

AMERICAN STORES COMPANY, a Delaware
corporation, JEWEL OSCO SOUTHWEST, INC.,
a New Mexico corporation and wholly owned
subsidiary of American Stores Company, OSCO DRUG,
a New Mexico Corporation, and STEVE MULRYAN,
individually and in his official capacity as Pharmacy
Coordinator for Jewel Osco Southwest, Inc.,

                    Defendants.

**MEMORANDUM OPINION**

      THIS MATTER comes before the Court on defendants' December 31, 1997 motion for summary judgment (Doc. 30). Having reviewed the submissions of the parties and the relevant law, the Court finds that defendants' motion should be GRANTED.

**I.  Facts and Procedural History**

      Plaintiff, a black man of African origin, alleges that he applied for employment as a pharmacist with defendant several times between 1991 and 1995 and that he was turned down each time because of his race and national origin. On June 26, 1995, plaintiff filed charges of discrimination against defendant Jewel Osco, with the New Mexico Human Rights Division and the Equal Employment Opportunity Commission (EEOC). On June

25, 1996, the state agency sent to plaintiff a "Determination of No Probable Cause," and on July 26, 1996, the EEOC issued plaintiff a right-to-sue letter. Plaintiff filed a complaint in this action on October 25, 1996, alleging counts based on Title VII (42 U.S.C. §2000e et seq.), Section 1981 (42 U.S.C. §1981), and state law claims under the New Mexico Human Rights Act (NMHRA) (N.M. Stat. Ann. §28-1-1 et seq. (1996 Repl. Pamp.), and for the tort of intentional infliction of emotional distress.

## II. Analysis.

### A. Claims Based on Title VII and Section 1981.

#### 1. Both claims are analyzed identically under McDonnell Douglas.

This case alleges race-based disparate treatment of a single individual in hiring. In such a case, the claims based on Title VII and §1981 are to be analyzed in the same way, under the burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). McDonnell Douglas was a Title VII case, but its framework is to be applied to cases under §1981 as well. Patterson v. McLean Credit Union, 491 U.S. 164, 188 (1989); Randle v. City of Aurora, 69 F.3d 441, 450 (10th Cir. 1995); Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991) (involving race-based failure to hire).

In addition, although New Mexico Supreme Court has held that the McDonnell Douglas method is applicable to cases under the NMHRA, Smith v. FDC Corp., 109 N.M. 514, 787 P.2d 433 (1990), in light of the disposition of the federal claims, the Court

declines to exercise supplement jurisdiction over the claim based on the NMHRA under 28 U.S.C. §1367(c)(3); see section II.B below.

Defendants state[1] that the elements of plaintiff's case are the same whether the case is brought under Title VII, §1981, or the NMHRA. Plaintiff agrees[2] that the "burden shifting scheme" set forth in McDonnell Douglas is common to these causes of action.

      2.  The McDonnell Douglas scheme.

The focus of McDonnell Douglas was "the order and allocation of proof in a private, non-class action challenging employment discrimination." 411 U.S. at 800. Under McDonnell Douglas, the plaintiff in a failure-to-hire case has the initial burden of establishing a prima facie case of racial discrimination by proving that: (1) plaintiff belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. 411 U.S. at 802; Drake v. City of Fort Collins, supra, 927 F.2d at 1159.

Once plaintiff makes out a prima facie case, the burden then shifts to the defendant to state a legitimate, nondiscriminatory reason for the applicant's rejection. The reason must be "specific and reasonable and suffice to rebut the presumption of discrimination

---

[1] Defendants' [Initial] Memorandum in Support of Motion for Summary Judgment at 7.

[2] Plaintiff's [Initial] Response to Defendants' Motion for Summary Judgment at 4.

created by plaintiff's prima facie case." Drake, supra, 927 F.2d at 1160.  However, the defendant need not prove that it was actually motivated by the stated reason; it is sufficient if defendant's evidence raises an issue of fact as to whether it discriminated against the plaintiff.  Texas Dep't of Community Affairs v. Burdine, supra, 450 U.S. at 254-55 (1981).

Once defendant carries this burden of production, the presumption raised by the prima facie case disappears, and the burden shifts back to plaintiff to show that the employer's stated reason was a pretext for a discriminatory motive.  McDonnell Douglas, supra, 411 U.S. at 802-804; Burdine, supra, 450 U.S. at 254.  The plaintiff need not present direct evidence of discriminatory intent in order to fulfill the "pretext" requirement; it is sufficient to present indirect evidence of discrimination by showing that "an employer's proffered explanation is unworthy of credence."  Randle, supra, 69 F.3d at 452.

In the context of summary judgment, the plaintiff must prove that there is a genuine issue of material fact as to one or more of the elements of the prima facie case. The defendant is then obligated to come forward with a legitimate reason for rejecting plaintiff's application; that done,  plaintiff must establish that there is an issue for the jury as to whether defendant's stated reason is a pretextual coverup for a discriminatory motive.  Thus, for a plaintiff to escape summary judgment under the McDonnell Douglas analysis, he must raise genuine issues of material fact as to both: (1) the elements of the prima facie case and, if defendant brings forth a legitimate business reason, (2) pretext.

4

The burden is on the plaintiff to make these factual showings; defendant's burden is only to articulate a nondiscriminatory reason for the failure to hire.  Randle, supra, 69 F.3d at 453 n.17.  Plaintiff has failed in this case to meet his burden of raising a genuine issue of fact with regard to pretext.

        3. Application of McDonnell Douglas to the facts of this case.

           a. Prima facie case.

The burden of establishing a prima facie case of disparate treatment under the McDonnell Douglas analysis is "not onerous," Texas Dep't Of Community Affairs v. Burdine, supra, 450 U.S. at 253.  Plaintiff has met his burden in this case.

Of the four McDonnell Douglas elements, defendants concede only that plaintiff, who is black, has met the first required element in that he is a member of a protected class, and they claim that plaintiff has not raised issues of fact as to the other three elements: that he was qualified for an available position, that he was rejected despite being qualified and that, after his rejection, the position remained open and the employer continued to seek applications.

There is a disputed issue of fact as to whether there was an "available position." Although defendant denies that a vacancy existed at the time plaintiff applied for work, there is evidence that defendant was hiring new pharmacists at various locations in Albuquerque during the period of plaintiff's applications.[3]  Plaintiff stated in his

---

[3] Exhibit 6 to Plaintiff's [Initial] Response, "Staff Pharmacist Roster";  Exhibit A to Defendants' Supplemental Brief, "Answer to Interrogatory No. 3."

deposition that Defendant Mulryan, Jewel Osco's Pharmacy Coordinator, told him that his application at the Montgomery store would be considered at other locations, including the store in Santa Fe,[4] and plaintiff points to evidence that Mulryan handled the hiring of pharmacists for all of defendants' New Mexico stores.[5] Defendants deny that Mulryan is the person solely responsible for hiring pharmacists in Albuquerque and the surrounding areas, and they allege that the final decision with regard to the hiring of pharmacists is made by individual store managers.[6]

Thus, even if there had been no vacancy at the Montgomery location where plaintiff dropped off several applications in late 1994 and early 1995, there appear to have been vacancies at other locations in New Mexico, and there is a disputed issue of fact as to whether plaintiff's application at the Montgomery store put him in the running for vacancies at other stores in the Jewel Osco system as well.

Defendants also argue that plaintiff has failed to show that he was qualified and was rejected for the position despite his qualifications. It is undisputed that plaintiff was rejected for employment at Jewel Osco, and the record indicates that he met the minimum qualification for employment with defendant as a pharmacist.[7] This is sufficient to make

---

[4] Exhibit C to Defendants' [Initial] Memorandum, Anaeme Deposition at 204-205.

[5] Plaintiff's [Initial] Response, at p. 10; Exhibit 1 to Plaintiff's [Initial] Response, Anaeme Deposition at 195-96; Exhibit 2 to Plaintiff's [Initial] Response, Niemeyer Deposition at 6-7.

[6] Answer, ¶8; Exhibit 5 to Plaintiff's [Initial] Response, Coblentz Deposition at 13-14.

[7] Exhibit E to Defendants' [Initial] Memorandum, Mulryan Deposition at 57; Exhibit 4 to Plaintiff's [Initial] Response, Mulryan Deposition at 43; Exhibit 5 to Plaintiff's [Initial] Response,

out the prima facie case required by McDonnell Douglas; detailed examination of the question of plaintiff's qualifications (beyond the minimum) is done later in the McDonnell analysis, at the "pretext" stage:

> Placing a plaintiff's qualifications in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy . . . Once such a showing [e.g., of basic qualification for the position] is made, the lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.

MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1119-20 (10th Cir.1991).

The evidence raising an issue of fact as to whether a vacancy existed also serves to raise a factual dispute as to whether pharmacist positions remained open and whether defendant continued to seek applicants from persons of plaintiff's basic qualifications.

Thus, plaintiff has presented sufficient evidence to escape summary judgment on the prima facie case portion of the McDonnell Douglas analysis. The burden now shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, supra, 411 U.S. at 802.

---

Coblentz Deposition at 27-28; Exhibit 7 to Plaintiff's [Initial] Response, Anaeme Affidavit; Exhibit B to Defendants' Supplemental Brief, Anaeme Resume.

b.  Assertion of a facially nondiscriminatory reason.

Defendants' proffered reason for rejecting plaintiff's employment application is that he has a history of frequently changing jobs.[8]  This is a "legitimate, nondiscriminatory reason" for rejecting a job applicant, sufficient to rebut plaintiff's prima facie showing.  Even at trial, "the defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Colon-Sanchez v. Marsh, 733 F.2d 78, 81 (10th Cir.), cert. denied, 469 U.S. 855 (1984).

c.  Evidence of pretext.

At this point, plaintiff has the opportunity to show that defendants' stated reason for plaintiff's rejection was in fact pretext for a discriminatory motive.  McDonnell Douglas, supra, at 804.  The Tenth Circuit has noted that as long as the plaintiff has presented evidence of pretext upon which a jury could infer discriminatory motive, the case should go to trial, as "judgments about intent are best left for trial and are within the province of the jury."  Randle, supra, 69 F.3d at 453.  On the other hand, the plaintiff does not meet his burden by simply alleging that the facially nondiscriminatory reason was pretextual; speculation is not sufficient to make out a case for the jury.  Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994).  And "plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient

---

[8] Exhibit E to Defendants' [Initial] Memorandum, Mulryan Deposition at 58-59; Exhibit B to Defendants' Supplemental Memorandum, Anaeme Resume.

basis for denial of summary judgment," Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

The issue is whether the plaintiff has offered sufficient evidence that a reasonable jury could find that defendant intentionally discriminated against him. Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir.), cert. denied, 513 U.S. 819 (1994).

> [A]fter the defendant has carried its burden of production by offering a legitimate, non-discriminatory reason for its actions, the presumption of discriminatory motive simply drops out of the picture . . . Thus, at the third stage of the McDonnell Douglas analysis, a discrimination case looks like any other civil case where the plaintiff at all times bears the ultimate burden of persuasion . . . [E]ven though a plaintiff has established a prima facie case, the defendant is entitled to summary judgment unless the plaintiff produces . . . evidence that the defendant's proffered reason for the action taken was pretextual. [Internal punctuation omitted].

Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1396-97 (10th Cir. 1997).

Plaintiff's evidence of pretext falls into three categories: (1) plaintiff's asserted justification for his history of frequently changing jobs; (2) evidence that defendant hired three other pharmacists who had also changed jobs frequently; and (3) Defendant Mulryan's comments in his deposition regarding the importance of communication skills in the work of a pharmacist, which, plaintiff claims, raises an inference that defendants' true reason for rejecting plaintiff was because "he is a black man of African origin" who speaks with a foreign accent.[9]   Taken as a whole, this evidence is not sufficient to raise

---

[9] Plaintiff's [Initial] Memorandum at 7.

an issue for the jury as to whether defendant's asserted reason for rejecting plaintiff's applications was mere pretext for a discriminatory motive.

(i) Explanation of job history.

Plaintiff makes the argument that he had good reasons for his job history, including alleged discrimination by other employers which has made it impossible for him to find permanent employment, and the fact that he left two previous positions because the employers went out of business. However, plaintiff has failed to present sufficient evidence to raise genuine issues as to these assertions.

Plaintiff states that he has filed a number of charges of racial discrimination against former employers,[10] but the record does not reveal how these claims were resolved and, in any case, the fact that plaintiff has charged other employers with discrimination is not probative of this particular employer's discriminatory animus. The record further fails to support the assertion that plaintiff left two previous jobs because those pharmacies closed. More importantly, plaintiff fails to demonstrate how Jewel Osco could or should have known his explanations for the frequent job shifts. His resume[11] shows that, of the eleven positions plaintiff held between 1988 and 1994, in only one instance did he list "pharmacy closed" as the reason for leaving; the most common reason for leaving is listed as "voluntary resignation."

---

[10] Exhibit 8 to Plaintiff's [Initial] Response.

[11] Exhibit B to Defendants' Supplemental Brief.

But again, even if plaintiff were able to show that he had good solid reasons for what appears to be an extremely checkered past, this isn't really probative of pretext on the part of this particular employer who, so far as can be discerned from the record, had no knowledge of the reasons for plaintiff's spotty resume and made a business decision based on the applicant's apparently unstable job history.  "[C]ourts are not free to second-guess an employer's business judgment." Lucas v. Dover Corp., 857 F.2d 1397, 1401 (10th Cir. 1988).

The evidence in this first category is not strong enough to rebut defendants' showing that it had a legitimate, nondiscriminatory reason for rejecting plaintiff's application.

                              (ii)  Preferential treatment of other applicants.

Plaintiff argues also that defendants hired other applicants with job histories similar to his, tending to show that the asserted reason for rejecting plaintiff was mere pretext for a discriminatory motive.  He points to the resume of April M. Kirikos, "an Anglo hired by Defendants,"[12] and to the work histories of James Moseley and Mark Cordova.

April Kirikos was hired by defendants in February 1994.[13]  James Moseley, an Anglo, was hired by defendants on August 22, 1994.[14]  It is unclear exactly who Mark

---

[12] Plaintiff's [Initial] Response at 7, and Exhibit 9 thereto.

[13] Exhibit 9 to Plaintiff's [Initial] Response, Kirikos Resume.

[14] Exhibit 6 to Plaintiff's [Initial] Response; Exhibit A to Defendants' Supplemental Brief.

11

Cordova is.  Although James Moseley appears in two lists of pharmacy personnel hired by defendants between 1991 and 1995, the name of Mark Cordova does not appear on either of the lists.  The only evidence on the record that he was hired by defendants at all comes in the Affidavit of Florence Maestas, Licensing Manager of the Board of Pharmacy, who describes Mr. Cordova's work history prior to his "being employed by Jewel Osco in 1992."[15]  There is nothing to show the date of his hiring by defendants nor, aside from his Spanish surname, anything on the record to indicate his race.

Plaintiff argues from these three examples that defendant rejected plaintiff but hired other applicants with job histories similar to his, thus demonstrating discriminatory animus based on race or national origin.  If the Mark Cordova evidence is to be considered at all, it indicates that he worked for two different pharmacies in a two-year period before being employed by Jewel Osco in 1992.  James Moseley worked for three different pharmacies in a three-year period before being hired by defendant in 1995.[16]

April M. Kirikos' resume shows that she obtained her bachelor's degree in pharmacy in December 1993.  Her first professional position was as a Staff Pharmacist with defendant, from February 1994 to June 1994; she next worked as a "Pharmacist - PRN" with K-Mart from June 1994 until the time the resume was prepared, which date is not indicated.  It is unclear whether Ms. Kirikos' work history with defendants is limited

---

[15] Exhibit 1 to Supplement to Plaintiff's Response.

[16] Exhibit 1 to Supplement to Plaintiff's Response.

to the 1994 position, or whether she was hired again after the K-Mart job; plaintiff implies that she was hired in his place, sometime after he made the March 1995 application, but there is nothing in the record to reflect this. If plaintiff's reference to Ms. Kirikos' "diverse work history" means her history before the February 1994 hiring, then her circumstances are not at all comparable to plaintiff's, as this was her first professional position as a pharmacist, her next most recent job being a three-year position as a pharmacy intern.[17]   Ms. Kirikos' work history since receiving her pharmacy degree consists of two different positions, the first a five-month job as a Staff Pharmacist with defendants, and the second as a pharmacist with K-Mart, lasting from June 1994 until an indeterminate date.

    Compared with the other three applicants, plaintiff's resume[18] shows a far greater tendency to drift from job to job. He held three different positions in 1988 as a Staff Pharmacist, each for less than six months, and he voluntarily resigned from each of them. His next job, in 1989, was a position as Staff Pharmacist; he voluntarily resigned from this job after four months. For two years in 1989-91, plaintiff worked for Furr's as Pharmacy Manager and Staff Pharmacist, also serving as a Relief Pharmacist at Lovelace for part of that time. This is the longest period of continuous full-time employment that appears on plaintiff's resume; he lists "Personal" as the reason for leaving this position.

---

[17] Exhibit 9 to Plaintiff's [Initial] Response.

[18] Exhibit B to Plaintiff's Supplemental Brief.

Following the Furr's position, plaintiff worked as a Staff Pharmacist at University Hospital for two and a half months in 1991, with no reason given for leaving. His other positions since 1991 have included on-call and relief work at three different pharmacies, plus a 1994 job as Staff Pharmacist at a pharmacy which apparently closed two and a half weeks after he was hired.

Although the Tenth Circuit has held that pretext may be shown by specific examples of nonminority employees receiving preferential treatment, their circumstances must be "comparable" to those of the plaintiff. McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1261 (10th Cir. 1988). In the present case, there is clearly a contrast between plaintiff's work history and the histories of the three pharmacists whose applications plaintiff invites the court to compare with his. Of course, it is not the function of the court, on a motion for summary judgment, to weigh the evidence. However, once the defendant rebuts plaintiff's prima facie case under the McDonnell Douglas analysis, "the presumption of discrimination simply drops out of the picture," and plaintiff is left with the burden of establishing a discriminatory motive, either by direct or indirect evidence. Durham v. Xerox Corp., supra, at 839. In Durham (at 840), the Tenth Circuit affirmed summary judgment for defendant, noting:

> Xerox does not violate section 1981 by choosing better or even equally qualified white candidates over a qualified black candidate unless it did so with discriminatory intent. [Citation]. Durham has not produced sufficient evidence to support a finding that Xerox did not choose the successful candidates simply because they were better candidates.

14

As was the case in <u>Durham</u>, plaintiff's evidence herein is not sufficient to support a finding that defendants' choice of other applicants was motivated by plaintiff's race or national origin, rather than simply because the others were better candidates.

### (iii) Statements regarding "communication skills."

Plaintiff points to a third piece of evidence to support his claim of pretext. Citing Defendant Mulryan's statements on the importance of communication skills for a pharmacist, plaintiff argues this shows that "[t]he real reason Defendants prescreened and disqualified Mr. Anaeme is that he is a black man of African origin,"[19] inferring from Mulryan's statements that he did not want someone with plaintiff's foreign accent dealing with defendant's customers. Plaintiff asks the court to allow the jury to draw the same inference.

Plaintiff is correct in asserting that a foreign accent which does not interfere with a person's ability to perform his job duties is not a legitimate justification for adverse employment decisions. <u>Carino v. Univ. of Oklahoma</u>, 750 F.2d 815, 819 (10th Cir. 1984). Mr. Mulryan, however, did not mention plaintiff's accent, but stated only that communication is an important part of the work of a pharmacist. There is no evidence that he felt that plaintiff was deficient in communicating; his statements were made in

---

[19] <u>Plaintiff's [Initial] Response</u> at 7-8.

response to a deposition question about the job duties of a staff pharmacist and did not specifically relate to plaintiff or his application for employment.[20]

Even where the defendant comments directly on an employee's communication problems based on a foreign accent, plaintiff cannot prevail on a Title VII claim of national-origin discrimination, when defendant shows that the adverse employment decision was based on the plaintiff's lack of qualifications. Bina v. Providence College, 844 F. Supp. 77 (D.R.I. 1994). In affirming this decision, the First Circuit stated, "references to audience difficulty in understanding Dr. Bina may reasonably be interpreted as expressing a concern about his ability to communicate to students rather than discriminatory animus based on ethnicity or accent." Bina v. Providence College, 39 F.3d 21 (1st Cir. 1994), cert. denied, 514 U.S. 1038 (1995).

The "communication" evidence in this case is conjectural; it does not add weight to plaintiff's showing on the issue of pretext and does not assist plaintiff in meeting his "ultimate burden" of proving that impermissible factors led defendants to reject his application. "[P]laintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., supra, at 772.

---

[20] Exhibit 4 to Plaintiff's Response, Mulryan Deposition at 10, 43-46.

(iv) Other evidence.

Plaintiff also raises the issue of alleged misrepresentations by Defendant Mulryan. He states that Mulryan told him that an application submitted at any one store would be considered for vacant positions at all of defendants' New Mexico locations, whereas hiring decisions are actually made by each individual store manager.[21]   He further states that Mulryan informed him that plaintiff's application would be kept on file for an entire year, whereas applications are typically kept on file for 60 days only.[22]   Plaintiff raises these alleged misrepresentations only in the context of the cause of action for intentional infliction of emotional distress, but to the extent they could have been cited by plaintiff as further evidence of pretext, they are not sufficient to raise an issue for the jury.   Even if Mulryan did make these statements to plaintiff, there is no evidence that he told nonminority applicants a different story, nor that any misstatements on his part went beyond "inconsistencies and contradictions" or "administrative carelessness," which does not suffice to establish a discriminatory motive.  Lucas v. Dover Corp., supra, at 1402; EEOC v. Sperry Corp., 852 F.2d 503, 510 (10th Cir. 1988).

---

[21] Exhibit 1 to Plaintiff's [Initial] Response, Anaeme Deposition at 194-95; Exhibit C to Defendants' [Initial] Memorandum, Anaeme Deposition at 204-206; Exhibit 2 to Plaintiff's [Initial] Response, Niemeyer Deposition at 6-7; Exhibit 5 to Plaintiff's [Initial] Response, Coblentz Deposition at 13-15.

[22] Exhibit 1 to Plaintiff's [Initial] Response, Anaeme Deposition at 194-95; Exhibit 5 to Plaintiff's [Initial] Response, Coblentz Deposition at 15-16.

Plaintiff has not shown in this case that defendants failed to fairly consider his reasonable explanations for his unstable job history, nor that they treated him differently from similarly-situated nonminority applicants, nor that they did not want foreign-sounding pharmacists such as plaintiff dealing with their customers.  Even if there had been differential treatment in this case, which plaintiff has failed to establish, it is not defendants' burden to prove why the differential treatment occurred; rather, plaintiff must prove that it was caused by intentional discrimination against a protected class.  EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1320 (10th Cir. 1992).
In light of plaintiff's burden as thus articulated, summary judgment is appropriate for the claims based on Title VII and §1981, on grounds that plaintiff failed to make out a case for the jury on the issue of pretext.

        4.   Issues of individual liability and statute of limitations.

Since summary judgment is granted on grounds that plaintiff failed to present sufficient facts to establish the elements of a cause of action under Title VII or §1981, there is no need to consider the issues of individual liability or statutes of limitations raised in connection with these claims in defendants' motion for summary judgment.

    B.   State law claims.

Having determined that summary judgment is appropriate for the federal claims alleged in plaintiff's complaint, the Court declines to exercise supplemental jurisdiction over the state law claims based on the NMHRA and the tort of intentional infliction of emotional distress, and there is no need to address the statute of limitations issue under

the NMHRA. The state law claims will be dismissed without prejudice. 28 U.S.C. §1367(c)(3); Bateman v. City of West Bountiful, 89 F.3d 704, 709 n. 5 (10th Cir. 1996).

### III. Conclusion

The Court will grant defendants' motion for summary judgment as to all claims. An Order in accordance with this Memorandum Opinion will issue, and the case will be dismissed.

Dated at Albuquerque this 2nd day of April, 1998.

_____
BRUCE D. BLACK
United States District Judge